UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,
*ex rel.* BLOCKQUOTE, INC.

Plaintiff,

v.

SCHOSTAK BROTHERS & COMPANY, INC.;
TSFR APPLE VENTURE LLC;
SOK VENTURE LLC; and
TSFR PIZZA LLC,

Defendants.
______________________________________/

Case No. 1:25-cv-475

HON. HALA Y. JARBOU
Chief U.S. District Court Judge

**UNITED STATES' COMPLAINT IN INTERVENTION**

By notice to the Court on August 20, 2026, the United States of America (the "United States") on behalf of the Small Business Administration ("SBA") has intervened in the above-captioned case. The United States alleges the following against Defendants Schostak Brothers & Company, Inc. ("SBCI"); TSFR Apple Venture LLC ("TSFR Apple"); SOK Venture LLC ("SOK Venture"); and TSFR Pizza LLC ("TSFR Pizza").

**INTRODUCTION**

1. This False Claims Act ("FCA") case arises out of the Defendants' fraudulent applications for Paycheck Protection Program ("PPP") Loans under the Coronavirus Aid, Relief, and Economic Security ("CARES") Act and the SBA's subsequent forgiveness of those loans.

2. As part of its PPP applications, SBCI falsely certified that it met the SBA's small business size threshold (generally, 500 employees for the first round, and 300 employees for the second round) when SBCI, along with its affiliates, actually employed more than 5,000 individuals at the relevant times.

3. Additionally, all Defendants are members of the same corporate group and collectively obtained $6,436,947 in second round loans despite a $4,000,000 corporate group limit.

4. As a result of the Defendants' false statements, they collected millions in loans for which they were not eligible and subsequently obtained loan forgiveness. The United States brings this action to recover these loans, plus treble damages, bank processing fees, interest, costs, and civil penalties as allowed by law.

**PARTIES**

5. The United States brings this action on behalf of the SBA, which funded and regulated the PPP under the CARES Act.

6. SBCI is a Michigan Corporation with its principal place of business in Livonia, Michigan. SBCI conducts business in the Western District of Michigan. SBCI is a real estate development company that owns and operates various commercial real estate projects throughout the country, including in the Western District of Michigan.

7. TSFR Apple is a Michigan Limited Liability Company with its principal place of business in Livonia, Michigan. TSFR Apple conducts business in the Western District of Michigan. TSFR Apple owns and operates Applebee's restaurant franchises throughout Michigan, including in the Western District of Michigan.

8. SOK Venture is a Michigan Limited Liability Company with its principal place of business in Livonia, Michigan. SOK Venture conducts business in the Western District of Michigan. SOK Venture owns and operates Olga's restaurant franchises throughout Michigan, including in the Western District of Michigan.

9. TSFR Pizza is a Michigan Limited Liability Company with its principal place of business in Livonia, Michigan. TSFR Pizza owns and operates Mod Pizza restaurant franchises in

Michigan. It owned and operated franchises in the Western District of Michigan during the relevant time periods.

10. Non-Parties TSFR Burger LLC and DT Venture LLC are Michigan Limited Liability Companies that are affiliated with the Defendants.

## JURISDICTION AND VENUE

11. This action arises under the False Claims Act, 31 U.S.C. § 3729 *et seq.,* and federal common law.

12. This Court has original subject matter jurisdiction under 31 U.S.C. § 3730 and 28 U.S.C. §§ 1331, 1345.

13. The Court may exercise personal jurisdiction over the Defendants, and venue is appropriate in this Court under 31 U.S.C. § 3732(a), because several of the Defendants transact business in this district and can be found in this district.

## BACKGROUND

### I. The Paycheck Protection Program

14. The CARES Act was a federal law enacted in March 2020 and designed to provide emergency financial assistance to the millions of Americans suffering the economic effects caused by the COVID-19 pandemic. One source of relief the CARES Act provided was the authorization of forgivable loans to small businesses for job retention and certain other expenses through the PPP. The program was modified and extended thereafter.

15. To obtain a PPP loan, a qualifying business submitted a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications to be eligible to obtain the PPP loan. In the PPP loan application,

the small business (through its authorized representative) was required to provide, among other things, its number of employees.

16. A business entity was only eligible for a PPP loan during the first round of PPP funding if, together with its affiliates, the business entity had less than 500 employees. 85 Fed. Reg. 20811.[1]

17. A business entity was only eligible for a PPP loan during the second round of PPP funding if, together with its affiliates, the business entity had less than 300 employees. 86 Fed. Reg. 3712.

18. Under the applicable regulations, concerns and entities were affiliates of each other when "a third party or parties controls or has the power to control" both entities. 13 C.F.R. § 121.301(f)[2]. "It does not matter whether control is exercised, so long as the power to control exists." *Id.*

19. The regulations also provide that affiliation can be established when there is common ownership, stock agreements, management, or identity of interest. *Id.*

20. Affiliation based on ownership can be established where "an individual, concern, or entity . . . owns or has the power to control more than 50 percent of the concern's voting equity." 13 C.F.R. § 121.301(f)(1). If no individual, concern, or entity is found to control, SBA deems the officers, managing members, or partners who control the management of the concern to be in control of the concern. *Id.*

---

[1] Entities that operate in certain industries could also apply in round one if they met the applicable SBA employe-based size standards for that industry. Because no relevant standard applies here, SBCI was eligible only if, together with its affiliates, it employed fewer than 500 employees.

[2] The citation and quotation of SBA regulations throughout this complaint are to the version of the regulations that were in place as of the time of the Defendants' applications.

21. Affiliation based on management can be established where "the CEO or President of the applicant concern (or other officers, managing members, or partners who control the management of the concern) also controls the management of one or more other concerns," or "where a single individual, concern, or entity that controls the Board of Directors or management of one concern also controls the Board of Directors or management of one of more other concerns." 13 C.F.R. § 121.301(f)(3). Franchises, restaurants, and other hospitality entities were exempt from the affiliation rules during both rounds of PPP funding;[3] however, that exemption did not apply to real estate development companies. 85 Fed. Reg. 20817.

22. Accordingly, if a real estate company was affiliated with restaurant entities, the employees of the restaurant entities would be considered—together with the employees of the real estate company—to determine whether the real estate company met the SBA's size standard. *See Id*.

23. As part of the PPP program, the SBA published express guidance through the form of Frequently Asked Questions. The guidance explicitly explained that entities were not eligible for loans if they were affiliated with exempt entities (e.g., restaurants or hotels) and their total employee count exceeded SBA's size standard. *See* Paycheck Protection Program Loans Frequently Asked Questions, Question 24, Example 3 (issued April 23, 2020), available at https://legacy.sba.gov/document/support-faq-ppp-borrowers-lenders (last accessed September 22, 2026).

24. In other words, SBA only waived the affiliation rules in one direction: restaurants did not need to comply with the affiliation rules, even if they were affiliated with non-restaurant

[3] Exempt entities are "those assigned a North American Industry Classification Code beginning with 72." 85 Fed. Reg. 20817.

or non-hospitality entities; but non-restaurant or non-hospitality entities still were required to comply with the affiliation rules, even if they were affiliated with restaurants. *See* 85 Fed. Reg. 20817, 20818 n.1.

25. In addition to the affiliation rules, a collective limit applied to entities that were in the same corporate group. During the first round of funding, the corporate group limit was $20,000,000. 85 Fed. Reg. 26324. During the second round of funding, the corporate group limit was $4,000,000. 86 Fed. Reg. 3720.

26. Under the applicable rules, entities are part of the same corporate group "if they are majority owned, directly or indirectly, by a common parent." 85 Fed. Reg. 26324.

27. A common parent may be a de facto partnership between one or more individuals. *See, e.g.*, *Accordius Health at Asheville v. United States Small Bus. Admin.*, No. 1:23-CV-00129-MR, 2025 WL 1503583, at *8-9 (W.D.N.C. Apr. 8, 2025); *Forest View Rehab. & Nursing Ctr. v. United States Small Bus. Admin.*, No. 24 CV 1490, 2024 WL 5247837, at *12-13 (N.D. Ill. Dec. 30, 2024).

28. Participating lenders processed all PPP loan applications. If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies and through a note directly between the participating lender and the borrower. The SBA did not contract directly with the borrowers as part of the PPP.

29. While the participating lender issued the PPP loan, the SBA guaranteed the loan (100% guaranteed). The lender transmitted data from the application—including information about the borrower, the total amount of the loan, and the listed number of employees—to the SBA while processing the loan and as part of the subsequent loan forgiveness process.

30. Businesses were required to use PPP loan proceeds on certain permissible expenses, including payroll costs, interest on mortgages, rent, and utilities. The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the business spent the loan proceeds on these expense items within a designated period and used a defined portion of the PPP loan proceeds on payroll expenses. 15 U.S.C. § 636(a)(36)(F).

31. The application process to obtain a PPP loan required the applicant to certify that it was eligible to receive a PPP loan under the rules in effect at the time it submitted the application.

32. The application process required the applicant to state whether it or any of its owners owned or had common management with any other business, and to list those businesses and their relationships in an addendum to the application.

33. The application process also required that the applicant certify that the information provided in the application and the information provided in all supporting documents and forms was true and accurate in all material respects.

## II. The False Claims Act

34. The FCA provides, in pertinent part, that any person who:

> (A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; [or]
> (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;
>
> . . . is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. 2461 note; Public Law 104-410), plus 3 times the amount of damages which the Government sustains because of the act of that person.

31 U.S.C. § 3729(a)(1).

35. For purposes of the FCA, the terms "knowing" and "knowingly" mean that a person, with respect to information: (i) has actual knowledge of the information; (ii) acts in

deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information. *Id.* § 3729(b)(1). No proof of specific intent to defraud is required. *Id*.

36. The FCA defines the term "claim," in pertinent part, as:

> …any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property, that…is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government—(I) provides or has provided any portion of the money or property requested or demanded; or (II) will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded[.]

*Id*. at § 3729(b)(2).

37. The statute defines the term "material" as "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." *Id*. at § 3729(b)(4).

## FACTUAL ALLEGATIONS

### I. The Defendants' affiliation and corporate group status.

38. At the time the Defendants applied for PPP loans, all Defendants were owned and controlled by three brothers: David, Robert, and Mark Schostak.

39. At the time SBCI applied for the PPP loans, David, Robert, and Mark Schostak collectively owned 100% of SBCI.

40. At the time SOK Venture applied for the PPP loans, David, Robert, and Mark Schostak collectively owned 51% of SOK Venture.

41. At the time TSFR Apple applied for the PPP loans, David, Robert, and Mark Schostak collectively owned 51% of TSFR Apple.

42. At the time TSFR Pizza applied for the PPP loans, David, Robert, and Mark Schostak collectively owned 51% of TSFR Pizza.

43. The other 49% of SOK Venture, TSFR Apple, and TSFR Pizza were owned by other Schostak family members.

44. At the time SBCI applied for the PPP loans, David, Robert, and Mark Schostak were listed as the directors of SBCI.

45. At the time SOK Venture and TSFR Apple applied for the PPP loans, David, Robert, and Mark Schostak were listed as the managing members of both SOK Venture and TSFR Apple.

46. At the time TSFR Pizza applied for the PPP loans, Mark Schostak was listed as the managing member of TSFR Pizza.

47. SBCI's website states that, "In the early 1980s, an opportunity to venture into the food industry presented itself. The Schostaks were looking to diversify their real estate business to include a day-to-day operating business in the company's portfolio. TEAM Schostak Family Restaurant's (TSFR) portfolio includes over 80 restaurants composed of Applebee's, MOD Pizza, and Olga's Kitchen." Schostak Brothers & Company, Inc., *Who We Are*, https://www.schostak.com/who-we-are/ (last accessed Sept. 22, 2026). A screenshot and excerpt from the screenshot are below:






# WHO WE ARE

**Schostak** has had a footprint in Michigan for over 100 years! Since 1920, the now fourth generation family-based company out of Livonia, MI, has included development, acquisitions, and leasing of retail, office, industrial, residential, mixed-use projects both urban and suburban. Schostak's current activities include joint ventures, build-to-suit projects, mixed-use developments, industrial and a variety of necessity-based retail and open air centers around the country.

Schostak Brothers & Company, Inc. has an outstanding reputation for managing and leasing a portfolio of properties and for responding to tenant's needs while continuing to look for ways to improve services, ensuring that the buildings are run efficiently, and are well-tenanted.

In the early 1980s, an opportunity to venture into the food industry presented itself. The Schostaks were looking to diversify their real estate business to include a day-to-day operating business in the company's portfolio. TEAM Schostak Family Restaurant's (TSFR) portfolio includes over 80 restaurants composed of Applebee's, MOD Pizza, and Olga's Kitchen.

For more information, please visit **www.teamschostak.com**.

48. The corporate headquarters for TEAM Schostak Family Restaurants and SBCI are the same office.

49. Because David, Robert, and Mark Schostak had the power to control the Defendants, owned all Defendants, and commonly managed the Defendants, all Defendants were affiliated under the applicable regulations.

50. Additionally, because all Defendants were majority owned by the three Schostak brothers, the Defendants shared a common parent and all were in the same corporate group.

## II. The Loan Applications, Awards, and Forgiveness

51. On April 3, 2020, SBCI applied for and subsequently obtained a first-round PPP loan in the amount of $1,232,247.00.

52. Defendants SOK Venture, TSFR Pizza, and TSFR Apple, along with non-parties TSFR Burger LLC and DT Venture LLC, obtained $20,035,980 in first-round PPP loans that were subsequently forgiven.

53. On October 15, 2020, SBCI applied for and subsequently obtained forgiveness of the first-round PPP loan.

54. On January 15, 2021, SBCI applied for and subsequently obtained a second-round PPP loan in the amount of $1,203,828.50.

55. On January 15, 2021, TSFR Pizza applied for and subsequently obtained a second-round PPP loan in the amount of $1,233,120.00.

56. On April 29, 2021, TSFR Apple applied for and subsequently obtained a second-round PPP draw in the amount of $2,000,000.00.

57. On May 13, 2021, SOK Venture applied for and subsequently obtained a second-round PPP loan in the amount of $2,000,000.00.

58. On June 18, 2021, TSFR Pizza applied for and subsequently obtained forgiveness of the second-round PPP loan.

59. On July 19, 2021, TSFR Apple applied for and subsequently obtained forgiveness of the second-round PPP loan.

60. On August 6, 2021, SOK Venture applied for and subsequently obtained forgiveness of the second-round PPP loan.

61. On September 24, 2021, SBCI applied for and subsequently obtained forgiveness of the second-round PPP loan.

**III. Defendants' Misrepresentations.**

62. First-draw loans were limited to entities that had fewer than 500 employees across all affiliated entities, met the SBA's size threshold, or were otherwise exempt under the franchise and hospitality exemption.

63. Second-draw loans were limited to entities that had fewer than 300 employees across all affiliated entities or were otherwise exempt under the franchise and hospitality exemption. 15 U.S.C. § 636 (37)(A)(iv)(I)(aa).

64. Because SBCI is an affiliate of all Defendants, as well as DT Venture LLC and TSFR Burger LLC, SBCI was required to count all employees across all of its affiliated entities as part of its applications for PPP loans.

65. In its April 3, 2020 and January 15, 2021 PPP applications, SBCI misrepresented its employee count because it did not disclose that it and its affiliates together employed more than 5,000 people, as required under the regulations.

66. Because SBCI's total employee count when considering affiliates exceeded the 300 and 500 employee thresholds, SBCI was not eligible for either its first-round or second-round PPP loan.

67. No applicable exemption or waiver permitted SBCI to exclude its restaurant affiliates from its employee count.

68. In its applications, SBCI failed to disclose its affiliation with the other defendants as required.

69. Specifically, the applications asked SBCI to disclose whether "any owner of the Applicant" is "an owner of any other business," and if so, to "list all such business" on a separate sheet.

70. In its applications, SBCI provided a false answer to this question because it failed to disclose the fact that its owners also owned SOK Venture, TSFR Pizza, TSFR Apple, TSFR Burger LLC, and DT Venture LLC.

71. In its applications, SBCI falsely represented that it was eligible for loans under the PPP.

72. These misrepresentations were knowingly false or made with deliberate ignorance or reckless disregard for the truth.

73. Specifically, SBCI certified that its representations were "true and accurate in all material respects" despite SBCI's knowledge that its owners also owned other entities that were not disclosed in the application.

74. Additionally, SBCI knew that it was affiliated with the other Defendants and was not eligible for the restaurant exemption yet applied for the loans anyway.

75. Indeed, one SBCI executive commented in a May 6, 2020 email that the rules provided that "an individual, group of individuals, or entity that control more than 50% would generally be considered affiliates."

76. Another TSFR executive later commented in a January 25, 2021 email that "SBCI is affiliated with the various TSFR entities but is not qualified for the waiver" applicable to restaurant entities.

77. SBCI applied for PPP loans despite internally acknowledging its affiliation status.

78. Based on these misrepresentations, SBCI obtained a first-draw PPP loan in the amount of $1,232,247 and a second-draw PPP loan in the amount of $1,203,827 for which it was not eligible.

79. SBCI received these PPP loans as a direct result of its false certifications.

80. Due to SBCI's false certifications, SBA was unaware of the actual number of SBCI's affiliated employees. As a result, SBA forgave the loans.

81. As part of the loan forgiveness program, the SBA paid SBCI's financial institution the entire amount of the loans, plus processing fees and interest.

82. Additionally, at the time SOK Venture and TSFR Apple each applied for a $2,000,000 second-draw PPP loan, other entities in the Schostak corporate group had already received $2,436,947 in second-draw PPP loans.

83. Accordingly, both SOK Venture and TSFR Apple were not eligible to receive the second-draw loans that they applied for, either and both of which put the Schostak corporate group over the $4,000,000 corporate group limit.

84. As part of their second-draw PPP applications, both SOK Venture and TSFR Apple falsely certified that their entities were eligible to receive the requested loans.

85. These misrepresentations were knowingly false or made with deliberate ignorance or reckless disregard for the truth.

86. Defendants knew they were a corporate group, with one executive directly stating in an email on January 11, 2021, "Practically speaking, we are a Corporate Group because of the common ownership and, hence, I think the $4 million cap applies."

87. Despite acknowledging the applicability of the $4,000,000 limit, the Defendants intentionally applied for $6,436,947 in second-draw loans.

88. Due to SOK Venture and TSFR Apple's false certifications, SBA forgave the loans.

89. As part of the loan forgiveness program, SBA paid SOK Venture and TSFR Apple's financial institution the entire amount of the loans, plus processing fees and interest.

**COUNT I**
**False Claims Act: Causing False or Fraudulent Claim,**
**31 U.S.C. § 3729(a)(1)(A) (Against SBCI, TSFR Apple, and SOK Venture)**

90. The United States realleges and incorporates by reference all paragraphs of this complaint set out above.

91. By virtue of the acts described above, SBCI, TSFR Apple, and SOK Venture knowingly presented, or caused others to present, false or fraudulent claims for payment, in violation of 31 U.S.C. § 3729(a)(1)(A). Specifically, SBCI, TSFR Apple, and SOK Venture knowingly presented, or caused to be presented, false claims for payment under the PPP program.

92. Payment of the false and fraudulent claims was a reasonable and foreseeable result of SBCI, TSFR Apple, and SOK Venture's conduct.

93. SBCI's, TSFR Apple's, and SOK Venture's misrepresentations were material to the claims being paid, because these defendants were not eligible for a PPP loan based on their total number of employees and their corporate group status.

94. By reason of the foregoing, the United States suffered actual damages because of the Defendants' wrongful conduct including by forgiving the ineligible loans, as well as paying interest and bank processing fees. The United States therefore is entitled under the False Claims Act to treble damages plus a civil penalty for each false claim.

**COUNT II**
**False Claims Act: False Statements Material to False Claims,**
**31 U.S.C. § 3729(a)(1)(B) (Against SBCI, TSFR Apple, and SOK Venture)**

95. The United States realleges and incorporates by reference all paragraphs of this complaint set out above.

96. By virtue of the acts described above, SBCI, TSFR Apple, and SOK Venture knowingly made, used, or caused to be made or used false statements material to a false claim for payment, in violation of 31 U.S.C. § 3729(a)(1)(B). Specifically, these defendants made or caused to be made false statements material to false claims for payment under the PPP Program. All claims were knowingly false claims under the False Claims Act.

97. Payment of the false claims was a reasonable and foreseeable consequence of SBCI's, TSFR Apple's, and SOK Venture's statements and actions.

98. SBCI's, TSFR Apple's, and SOK Venture's misrepresentations were material to the claims being paid, because these defendants were not eligible for PPP loans based on their employee count and corporate group status.

99. By reason of the foregoing, the United States suffered actual damages because of the Defendant's wrongful conduct by forgiving the ineligible loans and paying interest and bank processing fees. The United States therefore is entitled under the False Claims Act to treble damages plus a civil penalty for each false record or statement material to a false claim.

**COUNT III**
**(Unjust Enrichment – Federal Common Law)**

100. The United States realleges and incorporates by reference all paragraphs of this complaint set out above.

101. The United States provided funding to the Defendants through the PPP program that the Defendants were not entitled to.

102. The United States is entitled to the return of all payments by the United States directly or indirectly to the Defendants that were caused by the Defendants' misrepresentations.

103. By virtue of the conduct and acts described above, Defendants were unjustly enriched at the expense of the United States, which, under the circumstances, in equity and good conscience, and as dictated by the needs of justice and fairness, should be returned to the United States or would be unconscionable for Defendants to retain.

104. Specifically, it would be unjust for SBCI to retain its PPP program loans when it was not eligible for the loans and falsely certified its eligibility.

105. Further, it would be unjust for the Defendants to retain the PPP loans in the amount that exceeds the corporate group limit, and the Defendants should be required to return any excess amount.

**COUNT IV**
**(Payment By Mistake – Federal Common Law)**

106. The United States realleges and incorporates by reference all paragraphs of this complaint set out above.

107. The United States provided funding to the Defendants by mistake.

108. The Defendants were not eligible under the PPP for some or all of the loans that they received.

109. Payment was made to the Defendants under the mistaken belief that the Defendants were eligible for the loans based on the Defendant's false representations in their applications.

110. That mistaken belief was material to the SBA's decision to forgive the loans and to pay the bank processing fees and interest.

111. The United States is entitled to the return of all payments made by the United States for which the Defendants were not eligible.

**PRAYER FOR RELIEF**

WHEREFORE, the United States respectfully prays for judgment in its favor as follows:

1. As to the First and Second Causes of Action (False Claims Act): for (i) damages in the amount of the ineligible loans, plus interest and processing fees paid by the SBA, trebled as required by law, and such penalties as are required by law; (ii) the costs of this action, plus interest, as provided by law, and (iii) any other relief that this Court deems appropriate, to be determined at a trial by jury.

2. As to the Third and Fourth Causes of Action (Unjust Enrichment and Payment by Mistake), a disgorgement of all funds Defendants received through the PPP program for which they were not eligible.

3. All other and further relief as the Court may deem just and proper.

**DEMAND FOR A JURY TRIAL**

The United States hereby demands a jury trial on all claims alleged herein.

Dated: September 22, 2026

Respectfully submitted,

TIMOTHY VERHEY
United States Attorney

*/s/ Jacob L. Carlton*
JACOB L. CARLTON
KALEH H. PRUSS
Assistant United States Attorneys
U.S. Attorney's Office
Western District of Michigan
330 Ionia Avenue NW, Suite 501
Grand Rapids, MI 49503
Tel: (616) 808-2025
Email: Jacob.Carlton@usdoj.gov